Alfred J. Thomas and Edith B. Thomas v. Commissioner.
Thomas v. Commissioner
Docket No. 68169.
United States Tax Court
T.C. Memo 1960-81; 1960 Tax Ct. Memo LEXIS 208; 19 T.C.M. (CCH) 428; T.C.M. (RIA) 60081; April 28, 1960
*208 John E. Walsh, Jr., Esq., 1900 Land Title Building, Philadelphia, Pa., and Bernard V. Lentz, Esq., for the petitioners. Paul D. Ritter, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies and additions to tax against petitioners for the years 1947 to 1953, inclusive, in the following amounts: Additions to Tax
Sec. 294
Income Tax
Sec. 293(b)
(d)(1)(A)
Sec. 294(d)(2)
Year
Deficiency
I.R.C. 1939
I.R.C. 1939
I.R.C. 1939
1947
$ 975.35
$ 559.24
$ 86.88
$ 52.13
1948
713.32
356.66
62.16
37.29
1949
795.94
397.97
78.43
47.06
1950
1,935.76
1,209.72
229.00
137.40
1951
2,223.12
1,111.06
240.66
144.39
1952
2,078.18
1,399.54
250.47
150.28
1953
2,870.98
1,435.49
284.13
170.48
All of the issues have been disposed of by stipulation of the parties except the following: (a) whether any part of the deficiency for the year 1947 and for each of the years 1949 to 1953, inclusive, was due to fraud with intent to evade taxes, and (b) whether assessment and collection of deficiencies and additions to the tax for the year 1947, and each *209 of the years 1949 to 1953, inclusive, are barred by the statute of limitations. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioners Alfred J. Thomas and Edith B. Thomas, husband and wife, filed their income tax returns for the years 1947 to 1953, inclusive, with the collector or district director of internal revenue at Philadelphia, Pennsylvania. Late in 1945, David C. Peace and Ezra B. Whitman established Curtis Bailey Company, a partnership, to engage in the business of purchasing real estate, developing ground, and building and selling houses. Peace and Whitman had very little money when they formed the partnership, but they expected to make a profit in the future operation of the business. In early 1946, Peace and Whitman employed petitioner Alfred J. Thomas (hereinafter referred to as petitioner) to act as building superintendent for Curtis Bailey Company. At the time Peace and Whitman employed petitioner, they were aware that he had excellent qualifications for the position, and they believed that petitioner would be very valuable to the partnership. When Peace and Whitman employed petitioner, they agreed to *210 pay him an established salary. However, in view of the financial condition of the partnership, Peace and Whitman did not feel that they could pay petitioner a salary which would fully compensate him for his services. Peace and Whitman therefore planned to pay petitioner additional compensation in the form of bonuses over and above his established salary. The amount of the bonus was to be determined by the success of the business in the particular year involved. Peace and Whitman told petitioner that they would pay him bonuses as additional compensation over and above his salary if the business was successful. Peace and Whitman did not tell petitioner how to report bonuses for Federal income tax purposes. Curtis Bailey Company paid petitioner salary in the amounts of $5,113.57 in 1947; $5,200 in 1949; $5,550 in 1950; $7,800 in 1951; $7,800 in 1952, and $8,650 in 1953. Curtis Bailey Company withheld taxes from petitioner's salary, and both the salary and the tax withheld were correctly reported on petitioners' tax returns for the years 1947 and 1949 to 1953, inclusive. In addition to salary, Curtis Bailey Company paid petitioner additional compensation in the form of bonuses in the *211 amounts of $3,700 in 1947; $4,800 in 1949; $11,000 in 1950; $10,000 in 1951; $10,000 in 1952; and $9,150 in 1953. The bonus payments were made by check as follows: Date of Check
Amount
4/ 7/47
$1,000
9/12/47
700
11/ 7/47
1,000
12/24/47
1,000
3/ 2/49
500
8/26/49
500
12/ 2/49
500
12/23/49
3,300
6/30/50
2,000
9/ 1/50
2,000
11/24/50
2,000
12/21/50
5,000
5/11/51
1,000
7/20/51
1,000
8/17/51
1,000
10/ 1/51
2,000
12/21/51
5,000
6/20/52
1,000
7/18/52
1,000
10/10/52
1,000
11/28/52
2,500
12/23/52
4,500
2/13/53
1,000
6/16/53
2,000
7/31/53
1,000
10/ 2/53
1,500
12/24/53
3,650 Curtis Bailey Company treated the bonuses as compensation paid to petitioner. The amounts paid were claimed as expenses in the partnership records and were deducted from income on the partnership returns. Curtis Bailey Company did not withhold taxes with respect to bonuses. On their returns for the years involved, petitioners failed to report the total bonus payments which they received, and the bonus payments which were reported were labeled on the return either wholly as reimbursed expenses, or they were labeled partly as bonuses and partly as reimbursed *212 expenses. The amounts of bonus payments which were reported and which were not reported by petitioners were as follows: Bonus Payments Reported
Total Bonus
Bonus Pay-
Reported as
Payments
ments Not
Reported as
Reimbursed
Year
Received
Reported
Bonuses
Expenses
1947
$ 3,700
$2,000
$1,700.00
1949
4,800
1,500
3,300.00
1950
11,000
6,000
$3,000.00
2,000.00
1951
10,000
5,000
3,000.00
2,000.00
1952
10,000
2,300
5,000.00
2,700.00
1953
9,150
3,650
3,043.50
2,456.50
In addition to salary and bonuses, Curtis Bailey Company paid petitioner reimbursed expenses in the amounts of $270.15 in 1947; $488.23 in 1949; $643.53 in 1950; $1,274.05 in 1951; $624.55 in 1952; and $500.60 in 1953. Petitioners failed to report these reimbursed expenses on their income tax returns. Petitioners' correct net income for 1947, and petitioners' income as reported for 1947, are: Correct
Reported
Income: Salary
$5,113.57
$5,113.57
Bonus
3,700.00
Reimbursed Expenses
270.15
1,700.00
$9,083.72
$6,813.57
Less Business Expenses: Reimbursed
$ 270.15
0
Not Reimbursed
800.00
0
1,070.15
0
Adjusted Gross Income
$8,013.57
$6,813.57
Less Other Deductions: Charitable Contributions
$ 620.00
$ 620.00
Interest Paid
30.00
30.00
Taxes Paid
154.27
154.27
Losses
100.00
338.00
Miscellaneous
0
2,049.82
904.27
3,192.09
Net Income
$7,109.30
$3,621.48
*213 Petitioners' correct net income for 1949, and petitioners' net income as reported for 1949, are: Correct
Reported
Income: Salary
$5,200.00
$5,200.00
Bonus
4,800.00
Reimbursed Expenses
488.23
3,300.00
$10,488.23
$8,500.00
Less Business Expenses: Reimbursed
$ 488.23
$2,216.84
Not Reimbursed
900.00
0
1,388.23
2,216.84
Adjusted Gross Income
$ 9,100.00
$6,283.16
Less Other Deductions: Charitable Contributions
$ 575.00
$ 575.00
Interest Paid
739.00
739.00
Taxes Paid
232.00
232.00
1,546.00
1,546.00
Net Income
$ 7,554.00
$4,737.16
Petitioners' correct net income for 1950, and petitioners' net income as reported for 1950, are: Correct
Reported
Income: Salary
$ 5,550.00
$5,550.00
Bonus
11,000.00
3,000.00
Reimbursed Expenses
643.53
2,000.00
$17,193.53
$10,550.00
Less Business Expenses: Reimbursed
$ 643.53
$1,977.55
Not Reimbursed
900.00
0
1,543.53
1,977.55
Adjusted Gross Income
$15,650.00
$ 8,572.45
Less Other Deductions: Charitable Contributions
$ 1,150.00
$1,150.00
Interest Paid
697.63
697.63
Taxes Paid
475.60
475.60
Losses
100.00
1,800.00
2,423.23
4,123.23
Net Income
$13,226.77
$ 4,449.22
*214 Petitioners' correct net income for 1951, and petitioners' net income as reported for 1951, are: Correct
Reported
Income: Salary
$ 7,800.00
$7,800.00
Bonus
10,000.00
3,000.00
Reimbursed Expenses
1,274.07
2,000.00
Interest
16.69
0
$19,090.76
$12,800.00
Less Business Expenses: Reimbursed
$ 1,274.07
$1,996.03
Not Reimbursed
900.00
0
2,174.07
1,996.03
Adjusted Gross Income
$16,916.69
$10,803.97
Less Other Deductions: Charitable Contributions
$ 1,580.40
$1,620.60
Interest Paid
377.37
460.00
Taxes Paid
346.60
433.60
Losses
0
100.00
Miscellaneous
36.00
36.00
2,340.37
2,650.20
Net Income
$14,576.32
$ 8,153.77
Petitioners' correct net income for 1952, and petitioners' net income as reported in 1952, are: Correct
Reported
Income: Salary
$ 7,800.00
$7,800.00
Bonus
10,000.00
5,000.00
Reimbursed Expenses
624.55
2,700.00
Interest
49.78
0
Partnership Income (or loss)
44.04
(4,097.07)
$18,518.37
$11,402.93
Less Business Expenses: Reimbursed
$ 624.55
$2,480.01
Not Reimbursed
900.00
0
1,524.55
2,480.01
Adjusted Gross Income
$16,993.82
$ 8,922.92
Less Other Deductions: Charitable Contributions
$ 1,221.71
$1,784.58
Interest Paid
338.94
520.00
Taxes Paid
461.00
461.00
Losses
0
195.00
Miscellaneous
43.50
43.50
2,065.15
3,004.08
Net Income
$14,928.67
$ 5,918.84
*215 Petitioners' correct net income for 1953, and petitioners' net income as reported in 1953, are: Correct
Reported
Income: Salary
$8,650.00
$8,650.00
Bonus
9,150.00
3,043.50
Reimbursed Expenses
500.60
2,456.50
Interest
14.03
0
Partnership Income
1,274.22
1,080.64
Capital Gain (or loss)
0
(1,000.00)
$19,588.85
$14,230.64
Less Business Expenses: Reimbursed
500.60
0
Not Reimbursed
1,000.00
0
1,500.60
0
Adjusted Gross Income
$18,088.25
$14,230.64
Less Other Deductions: Charitable Contributions
$1,349.35
2,085.26
Interest Paid
329.12
448.87
Taxes Paid
387.19
387.19
Union Dues
36.00
36.00
Business Expenses
0
2,456.50
2,101.66
5,413.82
Net Income
$15,986.59
$ 8,816.82
In 1950, petitioners' 1947 income tax return was examined by a representative of the internal revenue service. After examining the records given to him by petitioner, the examining agent made no addition to income for bonuses. There was no issue raised between petitioners and the agent over bonus payments. In September or October of 1953, petitioners' 1950 income tax return was examined *216 by another internal revenue agent. The second agent examined petitioner's check book, and found that petitioner had failed to report $1,000 of bonus income. The agent discussed the failure to report the bonus income with petitioner. Petitioners' 1953 return was filed on March 6, 1954. Petitioner prepared the returns for himself and his wife for all years involved except 1953. Petitioners' return for the year 1953 was prepared by an accountant. The 1953 return was prepared from the background of petitioners' previous year's return, petitioner's 1953 W-2 statement from Curtis Bailey Company, and from information supplied to the accountant by petitioner. The bonus item included in the 1953 return was the figure which petitioner furnished to the accountant. Petitioners reported gross income of $12,800 on their 1951 income tax return. Petitioners omitted from gross income in the 1951 return the amount of $5,000 in bonuses, and $1,274.07 in reimbursed expenses, a total omission of $6,274.07. In the voucher portion of the bonus checks dated December 21, 1950, and December 21, 1951, each in the amount of $5,000 is the notation "Merry Christmas." A part of the deficiency applicable *217 to the year 1947, and to each of the years 1949 to 1953, inclusive, was due to fraud with intent to evade taxes. Petitioners' income tax return for the year 1947, and for each of the years 1949 to 1953, inclusive, was false and fraudulent with intent to evade taxes. Opinion Commendably, the parties have disposed of all issues in this by stipulation except the issues of fraud and limitations. Fraud On issues involving the application of section 293(b) of the Code of 1939, the burden is upon respondent to prove, by clear and convincing evidence, that some part of the deficiency, for each year involved, was due to fraud with inent to evade taxes. We may also point out, however, that there is seldom direct evidence of fraudulent intent, but that such intent may be inferred and established by circumstantial evidence, including of course, the acts and omissions of the taxpayer. . We discuss briefly each of the years involved, but for convenience in the inverse order, beginning with 1953, the last year involved. Stripped of unnecessary detail, it is clear that during 1953, petitioner received five bonus checks, totalling $9,150. *218 Of this amount, he reported a total of only $5,500, of which $3,043.50 was designated as bonus and $2,456.50 was designated as expense reimbursed. The unreported balance was $3,650. The return for 1953 was prepared by an accountant, who specifically asked for information as to the amount of any bonuses. The amount included in the return was the figure which petitioner gave to the accountant. The failure to inform the accountant of the $3,650 omitted must have been deliberate and intentional. Not only the accountant but a revenue agent who, in 1953, prior to the time the return for that year was filed, interviewed petitioner (with the accountant present) in relation to his 1950 return, made it clear that bonus payments were taxable income. Petitioner did not take exception to their statements (and, significantly, did not inform the agent that bonus payments had been omitted in other years, or file correct amended returns for such years). For 1953, petitioner merely continued to follow the ragged pattern of partial omissions begun in 1947. The view that he thought the omitted amount of $3,650 was a Christmas gift not includible in gross income because it was dated December 24, 1953, and *219 was accompanied by some expression of compliments of the season is not worthy of acceptance or belief, especially in the light of petitioner's position as an employee and the understandings he had with his employers in relation to compensation over and above regular salaries. It is also clear that petitioner was in no way misled by the fact that the W-2 forms did not include the bonus payments. In 1953, as well as in earlier years, to be discussed, infra, he reported part of bonuses which were not reflected in the W-2 forms. During 1952, petitioner received five bonus checks, totalling $10,000. Of this amount, he reported only a total of $7,700, of which $5,000 was designated as bonus, and $2,700 as reimbursement of expenses. The unreported balance was $2,300. The fact that he reported part of the bonuses shows that he knew that such a bonus was taxable. What was said with respect to the W-2 forms in discussing the year 1953 is equally applicable to 1952. Here, the theme varies somewhat, however, because none of the 1952 bonus checks was the same as the amount which petitioner failed to report, and there is no support whatever for any suggestion that petitioner regarded one of the *220 checks received near the year end as in fact a Christmas gift. During 1951, petitioner received five bonus checks totalling $10,000. Of this amount, he reported a total of only $5,000, designating $3,000 as bonus and $2,000 as reimbursement of expenses, leaving $5,000 unreported. He also failed to report $1,274.07 which he actually received as reimbursement of expenses. Included in the bonus checks was a check for $5,000 dated December 21, 1951. In the voucher portion of this check appear the words "Merry Christmas." Petitioner maintains that he thought the check was a Christmas gift, not includible in gross income. We cannot accept this testimony as worthy of belief. Assuming, arguendo, that the testimony raised a doubt in our mind as to fraudulent intent, it would not change the picture, because petitioner failed to report the amount of $1,274.07 which he actually received in reimbursement of expenses. The failure to report this item affected his net income as reported to the same extent as if it were the omission of a bonus check. There is no explanation of his failure to report this amount. While the item is, in a sense, not a large one, it is too substantial to be disregarded *221 as de minimis in the light of the over-all picture of omissions. For completeness, we add at this point that respondent, in meeting his burden need only establish that some part of the deficiency in a particular year is due to fraud with intent to evade taxes. During 1950, petitioner received four bonus checks totalling $11,000. Of this amount, he reported a total of only $5,000, designating $3,000 as bonus and $2,000 as reimbursement of expenses, leaving a balance of $6,000 unreported. Included among the bonus checks was a check for $5,000 dated December 21, 1950. In the voucher portion of this check appear the words "Merry Christmas." Petitioner takes the same position with respect to this check as he did in relation to the like check received in 1951, discussed supra, and our views are the same here as those expressed with respect to the year 1951. Again, however, this is not the whole picture, because petitioner failed to report $1,000 of his bonus receipts in addition to the $5,000 above referred to. While the pattern is a ragged one, each year involved discloses a failure to report an item or items of $1,000 or more. At least in the absence of satisfactory explanation, we cannot *222 view these omissions as other than wilful, deliberate, and with intent to defraud. During 1949, petitioner received four bonus checks totalling $4,800. Of this amount, he reported a total of only $3,300, all of which he designated as reimbursement of expenses, leaving a balance of $1,500 unreported. In view of our discussion, supra, with respect to the years 1950 to 1953, inclusive, we need not extend our expression of views to include a further analysis of 1949, except to say that the omission was obviously a part of the over-all pattern, and that the Christmas present theory need not be considered because the year-end check bears no relationship to the amount omitted. The issues relating to 1948 have been disposed of by stipulation of the parties. During the year 1947, petitioner received four bonus checks totalling $3,700. Of this amount, he reported only $1,700, all of which he designated as reimbursement for expenses, leaving a balance of $2,000 unreported. In view of our discussion, supra, with respect to the year 1949, any further claboration of our views relating to 1947 is unnecessary. It may be noted that the amount of unreported bonuses for the years in question *223 total $20,850. We think that the omissions disclose a pattern of wilful partial failure to report bonuses with the fraudulent intent to evade taxes. We hold, on the basis of the foregoing discussion, that some part of the deficiency for the year 1947, and for each of the years 1949 to 1953, inclusive, was due to fraud with intent to evade taxes. Limitations From our discussion of the issue of fraud, it is apparent that petitioners' income tax return for 1947 and for each of the years 1949 to 1952, inclusive, was false and fraudulent with intent to evade taxes. No issue of limitations is before us with respect to the year 1953. It is clear, therefore, that limitations do not apply to any of the years discussed in this Opinion. The issue of limitations with respect to the year 1948 has been disposed of by stipulation of the parties. Decision will be entered under Rule 50.